**E-FILED on** 2/7/13

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| AHMED ABDELFATTAH, an individual,<br><br>    Plaintiff,<br><br>    v.<br><br>CARRINGTON MORTGAGE SERVICES LLC, a limited liability corporation,<br><br>    Defendant. | No. C-12-04656-RMW<br><br>**ORDER GRANTING-IN-PART AND DENYING-IN-PART DEFENDANT'S MOTION TO DISMISS**<br><br>[Re Docket No. 20] |

    Defendant Carrington Mortgage Services ("CMS") moves pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss all claims asserted by plaintiff Ahmed Abdelfattah in his First Amended Complaint ("FAC"). The main issues addressed in this motion are whether: (1) California Code of Civil Procedure section 580d ("Cal. Code of Civ. P. § 580d") precludes the reporting of a deficiency to credit reporting agencies following a non-judicial foreclosure sale; (2) whether Abdelfattah has pled sufficient facts to support a theory that CMS supplied incomplete or inaccurate information to credit reporting agencies when it reported the full unpaid balance due on his home loan after the property securing the loan had been sold at a non-judicial foreclosure sale; (3) whether CMS failed to investigate and correct the allegedly misleading information after it was notified of the alleged inaccuracies; and (4) if the answer to (2) and (3) is "yes," whether Abdelfattah is entitled

to damages under the Fair Credit Reporting Act ("FCRA") or California's Consumer Credit Reporting Agencies Act ("CCRAA").

The court grants in part and denies in part defendant's motion as explained below.

## I. BACKGROUND

Plaintiff Abdelfattah originally secured a home loan for $540,000 in 2005. FAC ¶ 8, Dkt. No. 16. The loan was later acquired by CMS. After failing to make payments as agreed, a non-judicial foreclosure sale of Abdelfattah's home was conducted on May 21, 2008. *Id*. ¶ 9.[1] In June of 2012, Abdelfattah discovered that CMS had last reported to credit reporting agencies in June 2008 and had stated that he had a balance of $596,870 on his home loan, with $59,547 past due. *Id*. ¶¶ 10-11. Abdelfattah contends that the foreclosure sale of the home to CMS for $547,200 should have eliminated the loan balance or at least reduced it by the sale amount. *Id*. ¶ 10. On June 20, 2012, Abdelfattah sent a letter to the credit reporting agencies (Equifax, Experian and Transunion) and CMS "disputing the reported account and requesting that they cease reporting that Mr. Abdelfattah owes the entire amount of the loan when all or part of the loan was satisfied in the foreclosure sale." *Id*. ¶ 14. CMS responded with a letter dated July 17, 2012, indicating that it would not stop reporting the entire balance because "the amounts past due were an accurate statement of what was due at the time of the report." *Id*. ¶ 16. The letter also stated that "[t]he balances reflected in your credit report would not reflect a zero balance on your personal credit report because the final status of your account was reported based as of the time your property was acquired through the foreclosure sale, not at the time of the later sale of the property." *Id.*, Ex.1.

Abdelfattah now brings this action against CMS contending that California's anti-deficiency law as set forth in Cal. Code of Civ. P. § 580d precludes deficiency judgments after non-judicial foreclosure sales and, therefore, makes CMS' reporting of a purported balance of $596,870 inaccurate and incomplete. Abdelfattah alleges willful violations of FCRA and CCRAA, both of which require a reasonable investigation of disputes and prohibit reporting inaccurate or incomplete information to credit reporting agencies. *Id*. ¶¶ 28-39. Because of these alleged violations,

---

[1] CMS' July 17, 2012 letter to plaintiff says the property was acquired through foreclosure proceedings on June 3, 2008.

ORDER GRANTING-IN-PART AND DENYING-IN-PART DEFENDANT'S MOTION TO DISMISS —No. C-12-04656-RMW
TMDH      2

Abdelfattah contends that he has suffered emotional distress and humiliation, has been denied credit, and has been unable to refinance his automobile loan or secure a home or automobile loan. *Id.* ¶ 17.

## II. ANALYSIS

To survive a motion to dismiss, Abdelfattah's complaint must contain factual allegations that are "enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). Furthermore, it "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 668 (2009). It is with this standard in mind that the court addresses CMS' motion.

### A. Section 580d

The first issue is whether section 580d, which bars deficiency judgments following non-judicial foreclosure sales, necessarily precludes a creditor from reporting a deficiency to credit reporting agencies following a non-judicial foreclosure sale. CMS contends that section 580d's reach applies only to the obtaining of deficiency judgments, and, therefore, does not bar a creditor from furnishing deficiency information. Plaintiff claims that the sale extinguishes the debt.

Section 580d prevents a creditor from obtaining a deficiency judgment after a non-judicial foreclosure proceeding. Cal. Civ. P. Code § 580d; *Espinoza v. Bank of Am., N.A.*, 823 F. Supp. 2d 1053, 1056-57 (S.D. Cal. 2011). By its terms, section 580d applies "only when a personal judgment against a debtor is sought after a foreclosure." *Dreyfuss v. Union Bank of Cal.*, 24 Cal. 4th 400, 407 (2000). However, Abdelfattah contends that section 580d has the effect of entirely extinguishing the debt and, therefore, precludes the party barred from obtaining a deficiency judgment from reporting the existence of any deficiency. He argues that "courts have consistently taken a more policy based approach, which compels them to look beyond the plain language of the statute." Opp. 5, Dkt. No. 23. CMS points out in its reply that "if the statutory language is clear and unambiguous, our task is at an

end, for there is no need for judicial construction." Rep. at 6, Dkt. No. 26 (quoting *MacIsaac v. Waste Mgmt. Collection & Recycling, Inc.*, 134 Cal. App. 4th 1076 (2005)).

Section 580d makes no reference to the way a furnisher, defined as a "source that provides credit information to credit reporting agencies," *Gorman v. Wolpoff & Abramson*, LLP, 584 F.3d 1147, 1153 (9th Cir. 2009), may or may not report a deficiency to a credit reporting agency. The statute only bars a creditor from obtaining a deficiency judgment from a borrower after the creditor has completed non-judicial foreclosure. To preclude the reporting of a deficiency would seem inconsistent with the purpose of a credit report, namely to provide accurate credit information to potential creditors. Although a deficiency may not be reducible to a judgment or even collectible, it does show that the debtor did not fully pay the balance due on his debt. *See Redingler v. Imperial Sav. & Loan Ass'n*, 47 Cal. App. 3d 48, 50 (1975) (debtor-creditor relationship between the parties not totally extinguished during the foreclosure proceedings because creditor purchased the property for less than the amount of the balance due under the deed of trust); *Mortg. Guar. Co. v. Sampsell*, 51 Cal. App. 2d 180, 185 (1942) (anti-deficiency statutes do not even purport to wipe out the debt, but only to apply in the contingency that a deficiency judgment is sought).

Because Abdelfattah's claims only relate to the reporting of debt, section 580d does not preclude the reporting of a deficiency. The court dismisses Abdelfattah's claims based on the theory that section 580d precludes the reporting of a deficiency following a non-judicial foreclosure. However, the reported information must be accurate and complete.

### B. Allegedly Incomplete or Inaccurate Information

The second issue is whether Abdelfattah has pled sufficient facts to support a theory that CMS supplied incomplete or inaccurate information to the credit reporting agencies in violation of FCRA or CCRAA. In his FCRA claim he alleges that both he and the credit reporting agencies notified CMS that he was disputing the amount shown as due on his credit report. He further contends that thereafter CMS conducted an inadequate investigation which included "a failure to take into consideration the fact that the foreclosure sale had yielded proceeds which should be credited to loan balance, and failure to consider the application of the relevant anti-deficiency laws." FAC ¶ 37. In his CCRAA claim he contends that CMS provided information it knew to be

inaccurate or incomplete to the credit reporting agencies by stating that Abdelfattah owed a balance of "$596,870 as of Jun 2008" when, in fact, "the loan balance was eliminated or greatly reduced by the foreclosure sale and, therefore, the credit reporting should reflect this amount." FAC ¶ 37. CMS argues that Abdelfattah's claim that CMS' report was inaccurate is "unsupported, conclusory and fails as a matter of law." Mot. at 6.

The court is not persuaded by CMS's arguments. Abdelfattah has pled sufficient facts to plausibly support a theory that the reported balance of $596,870 was inaccurate or incomplete. A credit entry can be "incomplete or inaccurate" if it is actually incorrect or if it is misleading "to such an extent that it can be expected to adversely affect credit decisions." *Gorman*, 584 F.3d at 1163 (quoting *Sepulvado v. CSC Credit Servs., Inc.*, 158 F.3d 890, 895 (5th Cir.1998)). The Ninth Circuit has explained that the purpose of the FCRA is "to require furnishers to investigate and verify that they are in fact reporting complete and accurate information to the CRAs [sic] after a consumer has objected to the information in his file." *Id*. at 1164. In *Gorman*, the Ninth Circuit reversed the district court's grant of summary judgment finding that a credit file that was not marked as disputed, when it was, could be sufficiently misleading to form the basis of a claim. *Id.* The court noted that "a consumer's failure to pay a debt that is not really due does not reflect financial irresponsibility and thus the omission of the disputed nature of a debt could render the information sufficiently misleading so as to be 'incomplete or inaccurate' within the meaning of the statute." *Id*. at 1163.

Here, CMS has refused to change allegedly inaccurate and incomplete information after receiving notice in June 2012 of a dispute. The FAC alleges that Abdelfattah's credit report for June 2008 states he owes $596,870 when that amount had been largely satisfied by the foreclosure sale of his former home. While CMS emphasizes in its letter sent to Abdelfattah addressing his request for an investigation that the outstanding balance *at the time of the account closure* on May 21, 2008 was $590,818.43, it has not sufficiently explained why the balance was not reduced *after* CMS purchased the home for $547,200 in May 2008. As the court held in *Gorman*, even the technical accuracy of a reported figure does not necessarily insulate a creditor from liability if the report is misleading. 584 F.3d at 1163. Abdelfattah has sufficiently pled that the $596,870 figure that allegedly remains on his credit report is incomplete or inaccurate given the amount realized by CMS on the foreclosure

sale of Abdelfattah's home. Therefore, since CMS did not correct the report after notice and time to investigate, plaintiff's FCRA claim survives dismissal at this pleading stage. *See id.* at 1162; *Nelson v. Chase Manhattan Mortg. Corp.*, 282 F.3d 1057 (9th Cir. 2002).[2]

The court does not intend to imply, however, that CMS could not lawfully report the unpaid balance due on the loan at the time of the foreclosure sale, the credit given for the non-judicial foreclosure sale, and the amount of the deficiency. What is potentially misleading, however, is a report that there remains $596,870 owed when that is no longer the case following the foreclosure sale.

CMS contends that the CCRAA does not allow private actions by consumers against furnishers such as CMS for supplying incomplete or inaccurate information to credit reporting agencies. However, Cal. Civ. Code § 1785.25(a) provides that: "[a] person shall not furnish information on a specific transaction or experience to any consumer credit reporting agency if the person knows or should know the information is incomplete or inaccurate." Section 1681t(b)(1)(F), FCRA's preemption provision, expressly exempts § 1785.25(a) from its general exclusion of state law claims. In *Gorman*, the Ninth Circuit expressly held that a private right of action to enforce Cal. Civ. Code § 1785.25(a) is not preempted by the FCRA. 584 F.3d at 1172-73. Therefore, plaintiff's claim that CMS provided inaccurate and misleading information to the credit reporting agencies following the foreclosure sale is viable.

### C. Reasonable Investigation

CMS argues that Abdelfattah "fails to allege any facts to support his legal conclusion that CMS' investigation was unreasonable or that CMS failed to review all relevant information." Mot. 9. However, Abdelfattah has pled sufficient facts to support his claim that CMS deliberately or negligently ignored the foreclosure sale and its effect on plaintiff's loan balance. A reasonable investigation would have determined that that information affected the plaintiff's account balance.

### D. Damages

#### 1. Damages Under FCRA

---

[2] The parties do not appear to dispute that a consumer has no private cause of action against a furnisher of information prior to the time that the furnisher is advised of the disputed issue with the credit report.

Abdelfattah contends that as a result of the erroneous information on his credit report, he has been denied credit and thus been unable to refinance his automobile loan or secure a home or automobile loan. FAC ¶ 17. He has also allegedly suffered emotional distress. *Id.* CMS contends that Abdelfattah has failed to plead actual damages, arguing that the facts pled do not rise beyond the speculative level. CMS argues that Abdelfattah fails to plead "any facts showing that plaintiff's purported actual damages were caused by CMS . . . rather than [his] recent bankruptcy filing, defaulting on his loan, or the foreclosure of his home." Reply 11.

Under the FCRA, Abdelfattah can obtain actual damages and attorneys' fees if he successfully shows that CMS negligently failed to comply with any provision of FCRA. 15 U.S.C. § 1681o. The Ninth Circuit has interpreted "actual damages" under FCRA to include recovery for emotional distress and humiliation. *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995).

Although a denial of credit is not a prerequisite to recovery under the FCRA, Abdelfattah has marginally pled sufficient facts to support a reasonable inference that the failure to correct his account balance after CMS was made aware of the error in the amount reported was a substantial factor in his inability to get a new loan or refinancing. When the decision-making process implicates a wide range of considerations, all of which factor into the ultimate decision, a plaintiff must only show that the alleged wrongful conduct was a substantial factor in bringing about a denial of credit. *See Bradshaw v. BAC Home Loans Servicing, LP*, 816 F. Supp. 2d (D. Or. 2011); *Fregoso v. Wells Fargo Dealer Servs., Inc.*, CV 11-10089 SJO AGRX, 2012 WL 4903291 (C.D. Cal. Oct. 16, 2012); *Pourfard v. Equifax Info. Servs. LLC*, CIV 07-854-AA, 2010 WL 55446 (D. Or. Jan. 7, 2010). Thus, although the FCRA limits Abdelfattah's damage claim to damages incurred after CMS had notice of the dispute and time to conduct an investigation, plaintiff's damage claim survives at this pleading stage. *See* 15 U.S.C. § 1681s-2(b)(sets deadline for completing actions). Plaintiff contends that credit denials have occurred since 2008, citing the "continued reporting" by CMS of the deficiency as a "substantial factor" in those denials. FAC ¶ 17; *but see* FAC ¶ 11 (suggesting that last report was June 2008). However, only damages incurred after the deadline for CMS to

complete its investigation are potentially recoverable under the FCRA (approximately July 22, 2012).

### 2. Damages Under CCRAA

The parties' briefing does not focus on the question of what damages may be recovered under the CCRAA. However, the court in *Gorman* does an extensive analysis and concludes that damages are recoverable in a private action for a violation of Cal. Civ. Code § 1725(a), which proscribes the providing of information on a specific transaction to a credit reporting agency if the person knows or should know the information is incomplete or inaccurate. 584 F.3d at 1169-73. Therefore, if plaintiff can establish that in June 2008 CMS knowingly provided incomplete information to the credit reporting agencies, Abdelfattah may recover any damages caused by the reporting of that information.

### E. Punitive Damages under the FCRA

A consumer can recover punitive damages for willful non-compliance with the FCRA. 15 U.S.C. § 1681n. CMS argues in its motion that Abdelfattah's request for punitive damages is "improperly conclusory" and is "not supported by any factual matter." Mot. at 13. Here, Abdelfattah alleges that CMS offered to alter or remove the $596,870 balance only if he agreed to "make a financial settlement" with CMS. FAC ¶ 13. If Abdelfattah is able to prove that the reported balance was in fact inaccurate or incomplete and CMS would only change it if Abdelfattah paid CMS to do so, a jury could find such a violation to be willful. Thus, the court will not dismiss the claim at this early stage of litigation.

### III. ORDER

For the foregoing reasons, the court:

1. GRANTS defendant's motion to dismiss the claim that reporting a deficiency following a non-judicial foreclosure sale is in and of itself a violation of FCRA or CCRAA;

2. GRANTS defendant's motion to dismiss any claim under FCRA for damages incurred prior to dispute investigation deadline; and

3. DENIES defendant's motion to dismiss in all other respects.

DATED: February 7, 2013

*Ronald M. Whyte*
RONALD M. WHYTE
United States District Judge