BUCKLEYSANDLER LLP
DONNA L. WILSON (SBN 186984)
JOHN W. MCGUINNESS (SBN 277322)
dwilson@buckleysandler.com
jmcguinness@buckleysandler.com
100 Wilshire Boulevard, Suite 1000
Santa Monica, CA 90401
Phone (310) 424-3900
Fax (310) 424-3961

Attorneys for Defendant
CARRINGTON MORTGAGE SERVICES, LLC

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| AHMED ABDELFATTAH, an individual,<br><br>Plaintiff,<br><br>v.<br><br>CARRINGTON MORTGAGE SERVICES LLC, a limited liability corporation,<br><br>Defendant. | Case No. 5:12-cv-04656-RMW<br><br>**DEFENDANT CARRINGTON MORTGAGE SERVICES, LLC'S NOTICE OF MOTION AND MOTION TO STRIKE CLASS ALLEGATIONS, OR IN THE ALTERNATIVE, MOTION TO BIFURCATE; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>[Declaration of Donna L. Wilson, and [Proposed] Order filed concurrently herewith]<br><br>Hearing Date: May 24, 2013<br>Time: 9:00 a.m.<br>Place: Courtroom 6 – 4th Floor<br>Judge: Hon. Ronald M. Whyte |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on May 24, 2013 at 9:00 a.m., in Courtroom 6 of this Court, located at 280 South 1st Street, Fourth Floor, San Jose, California, 95113, Defendant Carrington Mortgage Services, LLC ("CMS") will and hereby does move the Court for an order striking the class allegations in Plaintiff Ahmed Abdelfattah's First Amended Individual Complaint for Violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.*; Class Action Complaint for Violations of the California Consumer Credit Reporting Agencies Act, Civil Code § 1785 *et seq*. pursuant to Federal Rules of Civil Procedure 12(f) and 23.  In the alternative, CMS will and hereby does move the Court for an order bifurcating the case into two phases pursuant to Federal Rule of Civil Procedure 42(b).

      This Motion is based upon this Notice of Motion and Motion, the Memorandum of Points and Authorities, the concurrently filed Declaration of Donna L. Wilson, the argument of counsel, all of the pleadings and other papers on file in this action, and such other matters as may be presented at the hearing on this Motion or prior to the Court's decision.

Dated:  April 19, 2013

DONNA L. WILSON
JOHN W. MCGUINNESS
BUCKLEYSANDLER LLP


By:_____
Donna L. Wilson
Attorneys for Defendant
CARRINGTON MORTGAGE SERVICES, LLC

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

This motion, which the Court *sua sponte* directed Defendant Carrington Mortgage Services, LLC ("CMS") to file, arises from the failure of the First Amended Complaint ("FAC") to allege and establish – whether as a threshold jurisdictional matter or as an essential element of its Consumer Credit Reporting Agencies Act ("CCRAA") claim – that each member of the putative class incurred actual damages caused by CMS's alleged violation of the CCRAA. Plaintiff Ahmed Abdelfattah ("Plaintiff") appears to take the position that no such allegations of damage and causation are required in order to pursue a claim under the CCRAA. Plaintiff, however, is wrong, and accordingly the class allegations must be stricken. *See e.g.* Cal. Civ. Code § 1785.31(a); *Trujillo v. First Am. Registry, Inc.*, 157 Cal. App. 4th 628, 637-38 (2007). In the alternative, as set forth below, this action should be bifurcated.

### STATEMENT OF FACTS AND RELEVANT PROCEDURAL BACKGROUND

Plaintiff filed for bankruptcy protection in 2003. (*See* CMS's Motion to Dismiss FAC [Dkt. No. 20] at 3; Declaration of Brandon P. Reilly in Support of Request for Judicial Notice in Support of Motion to Dismiss FAC [Dkt. No. 20-2] ¶ 2.) Plaintiff alleges that two years later, in November 2005, he took out a home loan in the amount of $540,000 for the property located at 718 Los Olivos Drive, Santa Clara, California 95050 (the "Property"). (FAC ¶ 8.) CMS subsequently acquired the rights to service this home loan. (*Id.*) Between May 2007 and June 2008, Plaintiff acknowledges and alleges that he made no payments on this loan. (*Id.* at ¶ 9.) In May 2008, CMS foreclosed on Plaintiff's home. (*Id.*) At the time of the foreclosure, Plaintiff's loan was past due for the May 2007 through June 2008 payments with an amount past due of $59,547 and a current balance of $596,870. (*Id.* at ¶ 11.)

Plaintiff further alleges, based on information and belief, that the foreclosure sale "satisfied all or almost all" of the CMS loan balance. (*Id.* at ¶ 10.) However, according to the Trustee's Deed Upon Sale, which Plaintiff incorporated by reference into the FAC, the Property was sold to CMS for approximately $547,200 and the outstanding debt as of May 21, 2008, was approximately $590,818.43, leaving an approximate deficiency of $43,618.43. (*Id.*; Request for Judicial Notice in

Support of Motion to Dismiss FAC [Dkt. No. 20-1] ¶ 4, Ex. 3.)

Plaintiff alleges that, at some point in 2012, he pulled a copy of his credit report. (*Id.* at ¶ 11.) He alleges that the credit report indicated that he owed the entire loan balance, and that the balance on the loan was $596,870. (*Id.*) In addition, Plaintiff alleges that the credit report stated that the loan had a "past due" amount of $59,547, and that CMS's most recent report to the credit reporting agencies ("CRAs") was in June 2008. (*Id.*) According to Plaintiff, he allegedly called CMS to dispute the reporting of the balance due to the CRAs and requested that CMS remove the balance due from his consumer report. (*Id.* at ¶ 12.) Plaintiff alleges that CMS refused to remove the balance due. Plaintiff further alleges that CMS stated Plaintiff would have to make a "financial settlement" with CMS to have the balance removed, and asked how much Plaintiff was willing to pay.[1] (*Id.* at ¶ 13.) Plaintiff does not allege that he ever made any payments in response to the alleged request by CMS for a financial settlement. (*See id.* at ¶¶ 13, 17.)

Plaintiff alleges that on June 20, 2012, he wrote to the CRAs (*i.e.*, Trans Union, Equifax, and Experian) disputing the "reported account" and requesting that they cease reporting that he owed the entire amount of the loan "when all or part of the loan was satisfied in the foreclosure sale." (*Id.* at ¶ 14.) According to the FAC, Plaintiff also sent the June 20 letter to CMS to inform it of California's anti-deficiency statute, which "prohibits foreclosing lenders from obtaining a judgment for the loan balance following non-judicial foreclosures." (*Id.* at ¶ 15.) Plaintiff alleges that CMS responded on July 17, 2012, that it would not stop reporting the entire balance to the CRAs, and that the amounts past due accurately stated the amounts due at the time of the report. (*Id.* at ¶ 16.)

According to the FAC, due to the continued "reporting" of this debt on his credit report, Plaintiff allegedly is unable to procure a loan on a new home, or obtain a refinance loan for his auto loan. (*Id.* at ¶ 17.) Plaintiff further speculates "upon information and belief" that the "manner in which the CMS loan was reported was a substantial factor in his inability to obtain such loans."

---

[1] Notably, Plaintiff did not attach to the FAC any credit report from any CRA from any time, notwithstanding that his credit report forms the putative basis for his claims.

(*Id.*)  He alleges also that he "experienced emotional distress associated with having false information included in his credit report, and CMS's refusal to remove the information." (*Id.*)  On this basis, under the Fair Credit Reporting Act ("FCRA"), Plaintiff individually seeks, *inter alia*, (i) actual damages, "including emotional distress damages and damages for lost credit opportunities caused by CMS's failure to conduct a reasonable investigation"; (ii) punitive damages for CMS's alleged willful misconduct; and (iii) attorneys' fees and costs.  (*Id.* at 9.)

On behalf of himself and a putative class, Plaintiff also asserts a claim under the CCRAA. (*See generally, id.* at ¶¶ 35-39.)  Plaintiff alleges that "CMS regularly reports the full amount of its California non-judicially foreclosed loans as due and owing…even though all or part of the loan balance has been satisfied in a foreclosure sale." (*Id.* at ¶ 18.)  Plaintiff further alleges that, based on information and belief, "CMS attempts to collect money from foreclosed homeowners in exchange for removing the balance due from the consumers' credit reports." (*Id.* at ¶ 19.)  Plaintiff defines a "proposed subclass" (hereinafter the "Proposed Class") as consisting of persons where the following conditions apply:

- The individual took out one or more mortgage loans secured by California property. (*Id.* at ¶ 20(a)).
- The real property which secured the loan was sold in a non-judicial foreclosure. (*Id.* at ¶ 20(b)).
- CMS reported to the credit reporting agencies that the loan had a balance due after the date of the non-judicial foreclosure sale. (*Id.* at ¶ 21(a)).[2]

However, in contrast to his individual FCRA claim, Plaintiff does not allege or seek on behalf of the class damages relating to emotional distress or missed credit opportunities caused by

---

[2] As discussed further *infra*, this class definition is derived from Plaintiff's "proposed class" and "proposed subclass" in light of this Court's February 7, 2013 Order Granting-in-Part and Denying-in-Part Defendant's Motion to Dismiss [Dkt. No. 30]; *see also* Joint Case Management Statement [Dkt. No. 33] at 11 (Plaintiff stating that, "[i]n light of the Court's February 7, 2013 ruling on the Motion to Dismiss, Plaintiff expects to proceed only with the subclass.").

3

CMS's alleged actions.[3] (*See id.* at ¶¶ 35-39; 10.) Nor does he allege that any members of the Proposed Class actually paid any post-foreclosure amounts to CMS as a result of CMS's alleged actions, or that they suffered any damages of any kind. (*Compare id.* at ¶¶ 20-34 *with* ¶ 39 (alleging that he, the Plaintiff, was "damaged" as a result of the alleged violation of the CCRAA, but not including a corresponding allegation for the individual class members).)

Initially, Plaintiff attempted to assert the novel legal theory that California's anti-deficiency statutes barred a mortgagee from reporting a deficiency to CRAs following a non-judicial foreclosure. (*See generally, id.*) That theory was rejected by this Court in the February 7, 2013 Order Granting-in-Part and Denying-in-Part Defendant's Motion to Dismiss [Dkt. No. 30] (the "Order"). (Order at 3-4.) The Court held that CMS was entitled under FCRA and the CCRAA to report Plaintiff's deficiency balance.

In the Parties' Joint Case Management Statement ("Joint Statement"), CMS recommended that the Court bifurcate discovery into two phases in order to first resolve the threshold issues of standing under Article III, FCRA and the CCRAA. (Joint Statement at 10. [Dkt. No. 33]) At the Case Management Conference on March 29, 2013, CMS reiterated this recommendation and provided legal authority for the CCRAA's express prerequisite that all members of the putative class allege and show actual damages and causation in order to proceed under the CCRAA. (Declaration of Donna L. Wilson in Support of Motion to Strike at ¶ 2.) In response, Plaintiff disputed that such a requirement existed. (*Id.* at ¶ 3; *see also* Joint Statement at 10-11 (not contending that any members of the Proposed Class suffered any damages.) The Court then directed CMS to file the instant Motion. (*Id.* at ¶ 4.)

**ARGUMENT**

**I.     Plaintiff's Class Allegations Should Be Stricken**

    **A.     Standard on Motion to Strike**

---

[3] In his general Prayer for Relief for the CCRAA claim, Plaintiff seeks on behalf of the Proposed Class, *inter alia*, (i) "reimbursement of any amount collected from class members after foreclosure"; (ii) punitive damages for willful misconduct; (iii) injunctive relief; and (iv) attorneys' fees and costs. (*Id.* at 10.)

Federal Rule of Civil Procedure 12(f) allows the Court to strike from any pleading "any redundant, immaterial, impertinent, or scandalous matter." "[T]he function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983); *see also Sanders v. Apple Inc.*, 672 F. Supp. 2d 978, 990-91 (N.D. Cal. 2009) (authorizing the striking of "impertinent matters" on this ground). "As with motions to dismiss, when ruling on a motion to strike, the Court takes the plaintiff's allegations as true and must liberally construe the complaint in the light most favorable to the plaintiff." *Tietsworth v. Sears*, 720 F. Supp. 2d 1123, 1146 (N.D. Cal. 2010) (citations omitted); *disapproved on other grounds by Tait v. BSH Home Appliances Corp.*, 2012 WL 6699247 (C.D. Cal. Dec. 20, 2012).

The Supreme Court has endorsed a critical examination of class allegations at the pleading stage, stating that "[s]ometimes the issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiffs' claim." *Gen. Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 160 (1982). "Under Rules 23(c)(1)(A) and 23(d)(1)(D), as well as pursuant to Rule 12(f), [the] Court has authority to strike class allegations prior to discovery if the complaint demonstrates that a class action cannot be maintained." *Tietsworth*, 720 F. Supp. at 1146; *see also* Fed. R. Civ. Proc. 23(c)(1)(A) (The court must "at an early practicable time…determine by order whether to certify the action as a class action."); *Sanders*, 672 F. Supp. 2d at 989-90; *accord Stearns v. Select Comfort Retail Corp.*, No. 08-2746, 2009 WL 1635931, at *19 (N.D. Cal. June 5, 2009); *Hovsepian v. Apple, Inc.*, No. 08-5788, 2009 WL 5069144, at *2 (N.D. Cal. Dec. 17, 2009). "In order for a class to be certified, the class must be ascertainable," and must satisfy both the requirements of Rule 23(a) and "one of the more stringent prerequisites set forth in Rule 23(b)." *Id.* (citing *Bishop v. Saab Auto. A.B.*, No. CV 95-0721, 1996 WL 33150020, at *4 (C.D. Cal. Feb. 16, 1996)); *see also Sanders*, 672 F. Supp. 2d at 991; *Hovsepian*, 2009 WL 5069144, at *2.

**B.     The Class Allegations Should Be Stricken For Failure to Allege Actual Damages and Causation**

Whether analyzed as an issue of statutory standing or as an element of the underlying

5

statutory claim, actual damages caused by the alleged violation of the statute are a prerequisite to pursuing a claim under the CCRAA.  *See* Cal. Civ. Code § 1785.31(a); *Trujillo v. First Am. Registry, Inc.*, 157 Cal. App. 4th 628, 637-38 (2007).  Plaintiff fails to allege these threshold requirements on behalf of the Proposed Class, and as a result, the class allegations should be stricken.  *See, e.g., Sanders*, 672 F. Supp. 2d at 989-90 (striking class allegations where class definition included individuals who suffered no damages).

### 1.  Actual Damages and Causation are Prerequisites to Pursuing a Claim Under the CCRAA

In order to bring a claim under the CCRAA, a plaintiff must have "suffer[ed] damages as a result of a violation" of the statute.  Cal. Civ. Code § 1785.31(a).  Subsection (a) of section 1785.31 states: "Any consumer who suffers damages as a result of a violation of this title by any person may bring an action in a court of appropriate jurisdiction against that person to recover the following…"  *Id.* (going on to list the available remedies for negligent and willful violations).

As such, "[a]ctual damage, not inherent harm, is required to state a CCRAA cause of action."  *Trujillo*, 157 Cal. App. 4th at 637-38 (internal quotations omitted); *see also* Cal. Civ. Code § 1785.31(a); *Banga v. Chevron U.S.A. Inc.*, No. C-11-01498, 2013 WL 71772, at *13 (N.D. Cal. Jan. 7, 2013) (citing *Trujillo* with approval: "To state a claim under 1785.31 for either damages or injunctive relief, the Plaintiff must show actual damages.").  The damages prerequisite extends to all of the CCRAA's authorized remedies, including actual damages, punitive damages in individual actions, injunctive relief, and punitive damages in class actions.  Cal. Civ. Code § 1785.31(a); *Trujillo*, 157 Cal. App. 4th at 637-38.  Most significantly for purposes of this Motion, each member of the putative class, not just the named plaintiff, must establish actual damages and causation.  *See Trujillo*, 157 Cal. App. 4th at 638 (rejecting plaintiffs' contention that subsection (c) of section 1785.31, which authorizes punitive damages for willful violations asserted as a class action, is not subject to the statute's actual damages requirement).

In *Trujillo*, the Fourth District addressed a putative class action claim under the CCRAA featuring allegations and arguments strikingly similar to those here.  *See generally, Trujillo*, 157

Cal. App. 4th 628.[4]  In that case, a putative class of prospective tenants whose rental applications had been rejected sued a CRA, alleging that incomplete unlawful detainer information in its tenant screening reports violated various statutes, including the CCRAA.  *Id.*  Plaintiffs alleged that the CRA violated the CCRAA by failing to note that the unlawful detainer actions had been dismissed.  *Id.* at 633-34.  The defendant moved for summary judgment on the ground that the allegedly incomplete tenant screening reports did not cause any damage to the named plaintiffs.[5]  *Id.* at 634.  The trial court agreed and granted summary adjudication for the defendant on each cause of action.  *Id.*

On appeal, the *Trujillo* plaintiffs argued that actual damages were not required to be established under any provision of the CCRAA because the alleged violations were "inherently harmful." Alternatively, the plaintiffs argued that the CCRAA did not require establishment of actual damages where the relief sought was injunctive or where members of the class were pursuing punitive damages.  *Id.* at 637-38.

Affirming the lower court's opinion, the *Trujillo* court squarely rejected the plaintiffs' arguments.  First, the court held that "[a]ctual damage, not inherent harm, is required to state a CCRAA cause of action."  *Id.*  The court reasoned that "if the Legislature thought inaccurate reports were inherently harmful, it would not have required that CCRAA plaintiffs have 'suffer[ed] actual damages as a result of a violation…'"  *Id.* at 637 (quoting section 1785.31(a)).
Second, the court held that the CCRAA's plain language requires actual damages as a predicate to pursuing injunctive relief, reasoning that plaintiffs' proposed reading would "open[] the floodgates, allowing anyone to assert a CCRAA cause of action as long as he or she seeks an injunction."  *Id.* at 637-38 (citations omitted).  Third, the court held that the class action provision for punitive

---

[4] "[W]here there is no convincing evidence that the state supreme court would decide differently, a federal court is obligated to follow the decisions of the state's intermediate appellate courts." *Ryman v. Sears, Roebuck & Co.*, 505 F.3d 993, 995 (9th Cir. 2007) (quoting *Vestar Dev. II, LLC v. Gen. Dynamics Corp.*, 249 F.3d 958, 960 (9th Cir. 2001)).

[5] In support of the motion, the defendant in *Trujillo* submitted declarations from property managers who had reviewed the rental applications in which the managers asserted that they would have rejected the applications even if the screening reports indicated dismissal of the unlawful detainer actions.  *Id.* at 634.

damages, as well, did not "supersed[e] the actual damage requirement," reasoning that removing the requirement "would take all teeth out of subdivision (a), absurdly breathing life into any CCRAA complaint seeking punitive damages, even those filed by uninjured plaintiffs – i.e., by anyone." *Id.* (citing *Dyna-Med, Inc. v. Fair Emp't & Hous. Comm'n*, 43 Cal. 3d 1379, 1387 (1987), and *Kramer*, 121 Cal. App. 4th at 579). The court found further support for its conclusion in the long-standing body of case law holding that "actual damage is a general prerequisite to recovering punitive damages." *Id.* (citing Cal. Civ. Code § 3294(a) (providing that punitive damages are recoverable only "in addition to the actual damages" suffered) and *Werschkull v. United States Cal. Bank*, 85 Cal. App. 3d 981, 1002 (1978)).

### 2. Plaintiff Has Failed to Allege Actual Damages and Causation on Behalf of the Proposed Class

Here, it is unclear from the FAC whether Plaintiff agrees that he is required to establish damages and causation as a predicate to pursuing his CCRAA claim. *Compare, e.g.,* FAC ¶39 (perfunctorily alleging that "[a]s a result of defendants' [sic] violation of the [CCRAA], plaintiff was damaged.") *with* Prayer for Relief on the Second Cause of Action (CCRAA) (no pursuit of actual damages for either himself or for the class members). But in any event, what is clear is that the Complaint *does not* allege that each, or even any, putative class member suffered actual damages. *Compare, e.g., id.* at ¶¶ 19 (alleging on information and belief "that CMS *attempts* to collect money from foreclosed homeowners") (emphasis added); 20-21 (omitting any injury in the definition of the Proposed Class) *with* ¶ 39 (alleging only that Plaintiff himself suffered "actual damages" as a result of the alleged CCRAA violation, without offering a corresponding allegation for the members of the class).[6] Nor, as a result, does the FAC allege any causation element on

---

[6] As a matter of law, Plaintiff's demand in the Prayer for Relief for the CCRAA cause of action "[f]or reimbursement of any amount collected from class members after foreclosure" cannot be considered part of the Complaint or the CCRAA cause of action. *See Green v. Bowen*, 639 F. Supp. 554, 562 (E.D. Cal. 1986); (citing *Nester v. Western Union Telegraph Co.*, 25 F. Supp. 478 (S.D. Cal. 1938), *aff'd*, 106 F.2d 587 (9th Cir. 1939), *reversed on other grounds*, 309 U.S. 582 (1940)). Even if it were, the class as proposed improperly would include class members who made post-foreclosure payments, and those like Plaintiff who did not. *See, e.g., Sanders*, 672 F. Supp. 2d at 989-90; *Comcast Corp. v. Behrend*, 133 S.Ct. 1426 (2013). Such a proposed class definition would violate Federal Rule of Civil Procedure 23, as it would not meet Rule 23's ascertainability, typicality, commonality, adequacy, and predominance requirements and thus should be stricken on

*(cont'd)*

1  behalf of the class.  Accordingly, under *Trujillo* and the clear statutory language, the class claims

2  should be stricken, and Plaintiff's claim should be as well to the extent he is not alleging that he

3  has suffered actual damages under the CCRAA.  *See Trujillo*, 157 Cal. App. 4th at 637-38; *see also*

4  *Sanders*, 672 F. Supp. 2d at 989-90 (striking class allegations where class definition included

5  individuals who suffered no damages).[7]

6  **II.      In the Alternative, if the Class Allegations Survive this Motion, the Litigation Should**

7  **Be Bifurcated to Resolve Issues of Constitutional and Statutory Standing at the Outset**

8  Rule 42(b) gives courts the discretion to order bifurcation of the case for "convenience, to

9  avoid prejudice, or to expedite and economize."  Fed. R. Civ. P. 42(b); *see also Mosqueda v. Cnty.*

10 *of Los Angeles*, 171 Fed. Appx. 16, 17 (9th Cir. 2006).  "One favored purpose of bifurcation is

11 to…avoid[] a difficult question by first dealing with an easier, dispositive issue."  *Danjaq LLC v.*

12 *Sony Corp.*, 263 F.3d 942, 961 (9th Cir. 2001) (affirming bifurcation on that ground) (citing *Hirst*

13 *v. Gertzen*, 676 F.2d 1252, 1261 (9th Cir. 1982)); *see also Zivkovic v. So. Cal. Edison Co.*, 302

14 F.3d 1080, 1088 (9th Cir. 2002) (bifurcation may defer "costly and possibly unnecessary

15 proceedings pending resolution of potentially dispositive preliminary issues"); *M2 Software, Inc. v.*

16 *Madacy Entertainment*, 421 F.3d 1073 (9th Cir. 2005) (affirming bifurcation of liability and

17 damages).  Implicit in this rule is the "power to limit discovery to the segregated issues," allowing

18 the court to defer "costly and possibly unnecessary discovery proceedings pending resolution of

19 potentially dispositive preliminary issues."  *Ellingson Timber Co. v. Great N. R.R. Co.*, 424 F.2d

20 497, 498 (9th Cir. 1970), *cert. denied* 400 U.S. 957 (citing *Hayden v. Chalfant Press, Inc.*, 281

---

(cont'd from previous page)
those bases as well.  In any event, the prayer does not state that the post-foreclosure payments were made as a result of CMS's alleged violation of the CCRAA.

[7] It should be noted that, in addition to the statutory standing requirements of the CCRAA, the injury-in-fact and traceability requirements for standing under Article III are also left unmet for the Proposed Class.  *See Friends of the Earth, Inc. v. Laidlaw Env. Servs., Inc.*, 528 U.S. at 180 (2002) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555 at 560-61 (1992)); *Schmier v. U.S. Court of Appeals for Ninth Circuit*, 279 F.3d 817, 821 (9th Cir. 2002) (citing *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990); *see also Robins v. Spokeo, Inc.*, No. CV10-05306 ODW, 2011 WL 597867 (C.D. Cal. Jan. 27, 2011).  "[T]he class must . . . be defined in such a way that anyone within it would have [Article III] standing."  *Sanders*, 672 F. Supp. 2d at 991 (internal quotations omitted). Because the FAC sets forth no allegations of damage or injury with respect to each member of the Proposed Class, granting of the Motion is warranted on these grounds, as well.

1  F.2d 543, 544 (9th Cir. 1960)).

2      Should the Court find that Plaintiff's class allegations survive this Motion, it would be most
3  efficient for this Court and the parties to bifurcate the action into two phases.  The first phase
4  would focus discovery and briefing on the preliminary, dispositive issue of whether Plaintiff and/or
5  his Proposed Class can show that they have standing to bring their claims as required by the
6  CCRAA, FCRA, and Article III.  The second phase, if necessary, would resolve the remaining
7  questions of liability and damages.  This proposed bifurcation would allow the Court to consider a
8  discrete and dispositive issue that, if resolved in favor of CMS, would dispose of this action.  The
9  more time-consuming and costly discovery required to determine questions of liability will be
10 deferred, if necessary, to a later date.

11     Accordingly, CMS respectfully requests an order bifurcating this action into the following
12 two phases:

**Phase I**:  Discovery relating to the merits of the threshold issue of whether Plaintiff and his Proposed Class have standing to bring a claim on behalf of himself under FCRA and the CCRAA, and the putative class under the CCRAA.

**Phase II**: If necessary, class-wide, merits-based discovery relating to Plaintiff's individual claim and his putative class action claim, including issues relating to class certification.

## CONCLUSION

For the foregoing reasons, CMS respectfully requests that the Court strike Plaintiff's class allegations.  In the alternative, if this Court finds that the class allegations survive this facial challenge, CMS respectfully requests an order bifurcating the litigation as specified *supra.*

Dated:  April 19, 2013

DONNA L. WILSON
JOHN W. MCGUINNESS
BUCKLEYSANDLER LLP

By:_____/s/_____
Donna L. Wilson
Attorneys for Defendant
CARRINGTON MORTGAGE SERVICES, LLC

**Certificate of Service**

I hereby certify that on April 19, 2013, I electronically filed a true and correct copy of the foregoing with the Clerk of Court using the CM/ECF system and that all counsel of record will be served via the Notice of Electronic Filing generated by CM/ECF.

/s/
Donna L. Wilson